1  Lisa Dearden Trépanier (SBN 156302)
   *LisaT@trepaniertajima.com*
2  Gregory E. Eisner (SBN 190135)
   *greg@trepaniertajima.com*
3  Lisa M. Dale (SBN 194688)
   *lisa.dale@trepaniertajima.com*
4  **TRÉPANIER TAJIMA LLP**
5  4605 Lankershim Blvd., Suite 540
   North Hollywood, California 91602
6  Telephone: (323) 487-1101

7
8  Attorneys for Defendants
   Doe 1 and Doe 2
   [Filed on behalf of Doe 1 only]
9

10            **UNITED STATES DISTRICT COURT**

11            **EASTERN DISTRICT OF CALIFORNIA**

12  John Roe RJ 50,                    Case No. 1:24-CV-01545-JLT-HBK

13            Plaintiff,               District Judge Jennifer L. Thurston
                                       Magistrate Judge Helena M. Barch-Kuchta
14
                                       **DEFENDANT DOE 1'S OPPOSITION TO**
15       vs.                           **PLAINTIFF'S MOTION TO REMAND**

16  DOE 1, A CORPORATION; DOE 2, A
17  CORPORATION; DOE 3, A              Hearing Date: March 7, 2025
    CORPORATION SOLE and DOES 4 TO 100, Time:         9:00 a.m.
18                                     Courtroom:    4
                                       Judge:        Hon. Jennifer L. Thurston
19       Inclusive,

20            Defendants.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND...............................................2

        A.      Plaintiff is domiciled in California. ...........................................................3

        B.      The Church is a Utah citizen........................................................................3

        C.      Temple Corporation is a Utah citizen. .......................................................4

        D.      The Fresno East Stake is a division of the incorporated Church. .............4

III.    LEGAL STANDARD .............................................................................................5

IV.     ARGUMENT ..........................................................................................................5

        A.      Doe 3 must be disregarded for jurisdictional purposes..............................5

                1.      Doe 3 is a part of the incorporated Church and not an "unincorporated
                        association."..........................................................................................5

                2.      As an unincorporated division of the Church, the Fresno East Stake cannot
                        sue or be sued.....................................................................................10

                3.      Even if it could be sued, the Stake would possess the Church's citizenship. ........13

                4.      Plaintiff is forum shopping by fraudulently joining the Stake..............13

                5.      Because the Stake is not a proper entity, there is no "forum defendant" so
                        "snap removal" does not apply ...........................................................14

        B.      The other prerequisites for diversity have been met. ................................15

                1.      Plaintiff is domiciled in California: He is under court order to remain in
                        California until at least 2027................................................................15

                2.      The $75,000 amount in controversy is satisfied. .................................17

        C.      Plaintiff's request for discovery should be denied....................................18

V.      CONCLUSION......................................................................................................19

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Adams v. W. Marine Prod., Inc.,*
    958 F.3d 1216 (9th Cir. 2020) ...................................................................................................15

4

*Anderson v. Watts,*
    138 U.S. 694 (1891) ...................................................................................................................15

5

6

*B&G Foods N. Am., Inc. v. Embry,*
    638 F. Supp. 3d 1122 (E.D. Cal. Nov. 3, 2022)........................................................................15

7

*Barr v. United Methodist Church,*
    90 Cal. App. 3d 259 (1979) ...............................................................................................8, 9, 10

8

9

*B-K Lighting, Inc. v. Vision3 Lighting,*
    No. 2:06-cv-02825-MMM-PLA, 2006 WL 8421831 (C.D. Cal. Nov. 14, 2006) ...............6

10

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008) ..................................................................................................18

11

*Breitman v. May Co. California,*
    37 F.3d 562 (9th Cir. 1994) ...............................................................................................6, 10

12

13

*Burger v. Kuimelis,*
    325 F. Supp. 2d 1026 (N.D. Cal. 2004) ...............................................................................11, 13

14

*Canesco v. Ford Motor Co.,*
    570 F. Supp. 3d 872 (S.D. Cal. 2021)........................................................................................17

15

16

*Carnes v. Smith,*
    236 Ga. 30 (1976) .........................................................................................................................9

17

*Carolina Cas. Ins. Co. v. Team Equip., Inc.,*
    741 F.3d 1082 (9th Cir. 2014) ..................................................................................................16

18

19

*Chestnut v. United Methodist Church,*
    215 N.Y.S.3d 376 (App. Div. 2024) .........................................................................................8

20

*Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.,*
    72 Cal. App. 5th 1042 (2021) ...................................................................................................10

21

22

*Committee of Tort Litigants v. Catholic Diocese of Spokane,*
    364 B.R. 81 (E.D. Wash. 2006) ...............................................................................................12

23

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
    574 U.S. 81 (2014)....................................................................................................................5, 17

24

25

*Edwards v. UPS,*
    No. 2:24-CV-01283-KJM-DMC, 2024 WL 4132664 (E.D. Cal. Sept. 10, 2024)...............14

26

*Ehrman v. Cox Commc'ns, Inc.,*
    932 F.3d 1223 (9th Cir. 2019) ..................................................................................................16

27

28

*Fuller v. Woodland Racing*,
   No. 92–2317–GTV, 1994 WL 171408 (D. Kan. Apr. 7, 1994)............................................11

*Gee v. Greyhound Lines, Inc.*,
   6 Cal. App. 5th 477 (2016) .....................................................................................10, 13

*Geographic Expeditions, Inc. v. Est. of Lhotka*,
   599 F.3d 1102 (9th Cir. 2010) ............................................................................................5

*Geppert v. Church of Jesus Christ of Latter-Day Saints, Inc.*,
   No. 23-cv-05763-JSW, 2024 WL 495255 (N.D. Cal. Nov. 16, 2023) .........................11, 12

*Grancare, LLC v. Thrower*,
   889 F.3d 543 (9th Cir. 2018) ..............................................................................................5

*Hicks v. Grimway Enters., Inc.*,
   No. 22-CV-2038 JLS (DDL), 2023 WL 3319362 (S.D. Cal. May 9, 2023) .......................18

*Ibarra v. Manheim Invs., Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ...........................................................................................18

*Intellisoft, Ltd v. Wistron Corp.*,
   No. H044281, 2019 WL 5204293 (Cal. Ct. App. Oct. 16, 2019) ........................................9

*Jane Roe JW 142 v. The Church of Jesus Christ of Latter-day Saints, et al.*,
   No. 5:24-cv-02150-KK-SPx, 2024 WL 5182415 (C.D. Cal. Dec. 20, 2024)............2, 6, 17

*Jane Roe KL 66 v. Doe 1*,
   No. 24-cv-07661-AMO (N.D. Cal. Dec. 31, 2024) ..............................................................2

*Jane Roe LM 89 v. Doe 1 [The Church of Jesus Christ of Latter-day Saints]*,
   No. 2:24-cv-09350-JFW-BFM, 2025 WL 212143 (C.D. Cal. Jan. 16, 2025) ..........2, 6, 7, 13

*Jane Roe SR 3 v. The Church of Jesus Christ of Latter-day Saints*,
   No. 24-cv-07119-EJD, 2025 WL 339162 (N.D. Cal. Jan. 30, 2025) ...............................2, 7

*John DZ 20, et al. v. Doe 1*,
   No. 22CV408645 (Santa Clara Sup. Ct., Jan. 2, 2024)......................................................11

*John Roe AJ 1 v. The Church of Jesus Christ of Latter-day Saints*,
   No. 2:24-cv-02990-DC-CSK, 2025 WL 85759 (E.D. Cal. Jan. 14, 2025) ........................2, 6

*John Roe CL 11 v. The Church of Jesus Christ of Latter-day Saints*,
   No. CV-24-8665-PA (SKx) (C.D. Cal. Oct. 11, 2024).........................................................2

*Kantor v. Wellesley Galleries, Ltd.*,
   704 F.2d 1088 (9th Cir. 1983) ..........................................................................................15

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
   199 F. Supp. 2d 993 (C.D. Cal. 2002) ..............................................................................17

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,
   805 F. Supp. 2d 932 (C.D. Cal. 2011) ...............................................................................10

*Lee v. TRW, Inc.*,
   No. 2:02-cv-05172-FMC-RZx, 2003 WL 27382060 (C.D. Cal. May 15, 2003)................13

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986) ............................................................................3, 15, 17

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
  22 F.4th 852 (9th Cir. 2022) ..........................................................................................18

*Lopez v. Kia Am., Inc.*,
  693 F. Supp. 3d 1063 (C.D. Cal. 2023) ...........................................................................5

*Mayes v. Am. Hallmark Ins. Co. of Texas*,
  114 F.4th 1077 (9th Cir. 2024) ......................................................................................15

*Miller v. Superior Court*,
  26 Cal. App. 41 (1915) .............................................................................................10, 13

*Peich v. Flatiron W., Inc.*,
  No. 5:16-cv-00540-ODW-DTB, 2016 WL 6634851 (C.D. Cal. Nov. 9, 2016) .................13

*Rockymore v. Eurofins Donor & Prod. Testing, Inc.*,
  No. 3:22-cv-00176-WHO, 2022 WL 2704122 (N.D. Cal. July 11, 2022) ..........................2

*Roe AH 71 v. Doe 1 E,*,
  No. CV 24-9544 FMO (JCx) (C.D. Cal. Dec. 27, 2024) ....................................................2

*Salzstein v. Bekins Van Lines, Inc.*,
  747 F. Supp. 1281 (N.D. Ill. 1990). .................................................................................11

*Sanfilippo v. Match Grp. LLC*,
  No. 20-55819, 2021 WL 4440337 (9th Cir. Sep. 28, 2021) .............................................13

*Schwartz v. Elec. Data Sys., Inc.*,
  913 F.2d 279 (6th Cir. 1990) ............................................................................................6

*Siegal v. Superior Court*,
  203 Cal. App. 2d 22 (1962) .............................................................................................10

*Silva v. St. Anne Catholic Sch.*,
  595 F. Supp. 2d 1171 (D. Kan. 2009) ..............................................................................11

*Smith v. Church of Jesus Christ of Latter-day Saints*,
  431 F. Supp. 3d 733 (E.D. Va. 2020), ............................................................................12

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
  19 F.3d 514 (10th Cir. 1994) ...........................................................................................15

*Stine v. Moore*,
  213 F.2d 446 (5th Cir. 1954) ...........................................................................................15

*Touche Ross & Co. v. State Bd. of Equalization*,
  203 Cal. App. 3d 1057 (1988) ...........................................................................................6

*Turner v. Church of Jesus Christ of Latter-day Saints*,
  1996 WL 34447787 (N.D. Tex. Feb. 22, 1996) ................................................................12

*Von Bradley v. Dep't of Children & Family Servs.*,
  No. CV 17-6556-JFW (AGR), 2018 WL 7291450 (C.D. Cal. Dec. 12, 2018) .................15

**<u>Statutes</u>**

28 U.S.C. § 1332(a) ........................................................................................................5

28 U.S.C. § 1446(a) ........................................................................................................5

Cal. Civ. Proc. Code § 340.1 ..................................................................................1, 2, 14

TRÉPANIER
TAJIMA LLP
Los Angeles

### I.    INTRODUCTION

Plaintiff's remand motion should be denied because the parties are citizens of different states and the amount in controversy exceeds $75,000. Removal cannot be defeated by naming as a separate defendant a division of an incorporated defendant.

Plaintiff is a California citizen; he has not produced any evidence to refute this. The first named defendant, Doe 1, is The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole ("Church").[1] The Church is a Utah-based and Utah-incorporated 501(c)(3) nonprofit entity, and therefore a Utah citizen. The Church acknowledges it is the proper defendant and would be liable for any damages if Plaintiff can establish liability. That should be the end of the diversity analysis, but Plaintiff named two additional defendants.

The second named defendant, Doe 2, is Temple Corporation of The Church of Jesus Christ of Latter-day Saints ("Temple Corporation"), an integrated auxiliary of the Church. Temple Corporation is incorporated in Utah and is headquartered in Utah and is therefore a Utah citizen. Temple Corporation's sole purpose is advancing the Church's mission through ownership of the Church's temples, which have nothing to do with this case. Naming Temple Corporation as a defendant makes no sense, nor does it defeat diversity.

The third named defendant, Doe 3, is the Fresno California East Stake (the "Stake" or "Fresno East Stake"), an ecclesiastical subunit of the Church. This Stake is one of thousands of Church stakes, which are all ecclesiastical parts of the Church's worldwide organization. The Stake does not have a separate or different mission or purpose from that of the Church.

Unlike the Church and Temple Corporation, the Fresno East Stake is not incorporated and has no legal existence apart from the Church. Like thousands of other stakes, the Fresno East Stake is part of the Utah-incorporated and Utah-based Church and not a separate legal entity. "Corporations are proper defendants; unincorporated divisions of them are simply that—parts of them." *Rockymore v. Eurofins*

---

[1]    Plaintiff refers to the defendants by "Doe" designations as required by California Code of Civil Procedure section 340.1(l) (former applicable version; current version is subdivision (k)) in actions for childhood sexual abuse where the plaintiff is over age 40 at the time of suit. Defendants' identities, however, are known. Thus, Defendants Does 1–3 are sued under pseudonyms but are not fictitious defendants, like Does 4-100.

1  *Donor & Prod. Testing, Inc.*, No. 3:22-cv-00176-WHO, 2022 WL 2704122, at *3 (N.D. Cal. July 11,

2  2022). Plaintiff has shown "no legal basis to be able to sue an entity that does not have any independent

3  legal status." *Id.* A plaintiff cannot defeat diversity by naming a defendant that *does not exist* as a

4  separate legal entity but is instead just a division of a properly named defendant. Attempts to do so have

5  been repeatedly rejected under precisely the same circumstances. *See, e.g.*, *Jane Roe JW 142 v. The

6  Church of Jesus Christ of Latter-day Saints, et al.*, No. 5:24-cv-02150-KK-SPx, 2024 WL 5182415 (C.D.

7  Cal. Dec. 20, 2024); *John Roe AJ 1 v. The Church of Jesus Christ of Latter-day Saints*, No. 2:24-cv-

8  02990-DC-CSK, 2025 WL 85759, at *3 (E.D. Cal. Jan. 14, 2025); *Jane Roe LM 89 v. Doe 1 [The

9  Church of Jesus Christ of Latter-day Saints]*, No. 2:24-cv-09350-JFW-BFM, 2025 WL 212143, at *3

10  (C.D. Cal. Jan. 16, 2025); *Jane Roe SR 3 v. The Church of Jesus Christ of Latter-day Saints*, No. 24-cv-

11  07119-EJD, 2025 WL 339162, slip op. at 3 (N.D. Cal. Jan. 30, 2025).[2]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

13  Plaintiff alleges he was abused by "an adult member of the Defendants' Church"—his father[3]—

14  from 1990 to 1997. Compl. ¶ 2, ECF 6-3. The Church condemns all abuse, especially child sexual abuse,

15  but denies liability in this case. Plaintiff sues three Defendants, contending each is responsible for the

16  perpetrator's conduct. *Id.* ¶¶ 17-18, ¶¶ 57-82. On December 17, 2024, Defendant Doe 1 removed this

---

[2]       Plaintiff's authorities are not persuasive. In both *John Roe CL 11 v. The Church of Jesus Christ of Latter-day Saints*, No. CV-24-8665-PA (SKx) (C.D. Cal. Oct. 11, 2024) (ECF 6-6) and *Roe AH 71 v. Doe 1 E,*, No. CV 24-9544 FMO (JCx) (C.D. Cal. Dec. 27, 2024) (ECF 6-8), the courts held (erroneously) that the defendant could not allege plaintiff's citizenship on information and belief. In any event, the Church in this case has submitted sufficient evidence of Plaintiff's domicile in California. ECF 1-20 through 1-27. Neither case reached the issue of whether Doe 3 was a proper entity. In *Jane Roe KL 66 v. Doe 1*, No. 24-cv-07661-AMO (N.D. Cal. Dec. 31, 2024) (ECF 6-7), the court held (erroneously) that Does 1, 2, and 3 possessed no citizenship because they are fictitious defendants. The *KL 66* court relied on cases where plaintiff was named, but all defendants were Does, with no discussion of the situation in that case (and here) where *no* parties are named because of California Code of Civil Procedure § 340.1. Church counsel has found *no* case from the Ninth Circuit addressing the diversity of the parties when there are *no* named plaintiffs *or* defendants. Importantly, all parties in this action agree on the known identity of all parties. Further, the *KL 66* court erroneously held that Doe 3 was a separate defendant even though it operated "under the control of Doe 1" and "reports directly to Doe 1." The court stated that Doe 3 was registered to do business in California (despite uncontroverted evidence to the contrary). The Church submits that all three cases were wrongly decided.

[3]       Plaintiff sued his father in 2020 for sexual abuse and in 2023 obtained a judgment against his father for $2,075,000. Fresno County Superior Court Case No. 20CECG00784. Plaintiff now sues his Church for the exact same abuse.

1  case to this Court. ECF 1.[4]

2  **A.     Plaintiff is domiciled in California.**

3         Plaintiff does not dispute that he is domiciled in California. *See* Mot. at 1:11 ("there are

4  California residents on both sides of the 'v'"), 5:4 ("Plaintiff is a California resident"), 9:3 (noting

5  plaintiff is a "California plaintiff"), ECF 6-1. Plaintiff alleges in the complaint that he is "a resident of the

6  County of Fresno, State of California." Compl. ¶ 3, ECF 6-3. *See Lew v. Moss*, 797 F.2d 747, 751 (9th

7  Cir. 1986) (noting allegations of residency create a rebuttable presumption of domicile). Public records

8  confirm he is domiciled in California. *See* Notice of Removal at ¶¶ 7-8, ECF 1; Declaration of Adam

9  Dawson ¶¶ 3-10, Exhs. A–G, ECF 1-20 through 1-27.[5]

10  **B.     The Church is a Utah citizen.**

11         The Church is incorporated in Utah as a 501(c)(3) nonprofit corporation. Declaration of Branden

12  Wilson ¶ 12, ECF 1-14. Its headquarters are in Salt Lake City, Utah. *Id.* ¶ 4. The Church's governing

13  bodies, which are the First Presidency and the Quorum of the Twelve Apostles, direct, control, and

14  coordinate the Church's activities from Church headquarters in Salt Lake City, Utah. *Id.* ¶ 5. The Church

15  is registered to do business in California. *Id.* ¶ 12; ECF 1-15 [CA Sec'y of State Filing].

16         The Church corporation is the secular embodiment of the ecclesiastical Church. Wilson Decl. ¶¶

17  12, 14, ECF 1-14. It hires and pays Church employees, holds title to Church assets, receives donations

18  from Church members, enters contracts, registers to do business in foreign jurisdictions (including

19  California), has a registered agent, and can sue and be sued. *Id.* ¶¶ 14, 27. Its Articles of Incorporation

20  state that it

21         exists to serve as the interface with civil society on behalf of the Church, and to be a
22         temporal vehicle for performing the functions and carrying out the activities of the
           Church. Any claim arising from the activities of the Church or its agents that might be
23         asserted against the Church shall instead pertain solely to the corporation.

24  *Id.* ¶ 13.

25

26  ─────────────────────
    [4]     Plaintiff erroneously asserts that *both* Doe 1 and Doe 2 removed this case. *See* Memorandum of
27  Points & Authorities in support of Motion to Remand ("Mot.") at 1, ECF 6-1. That is not correct. Only
    Doe 1 removed the case, with the consent of Doe 2. ECF 1.

28  [5]     These documents were ordered filed under seal. ECF 4. The unredacted versions were filed under
    seal. ECF 5.

TRÉPANIER
TAJIMA LLP
Los Angeles

**C.    Temple Corporation is a Utah citizen.**

Temple Corporation is an auxiliary and supporting organization of the Church. *Id.* ¶ 26. It advances the Church's mission through the ownership of temples. *Id.* Temple Corporation is incorporated in Utah, its headquarters are in Salt Lake City, Utah, and its officers direct, control, and coordinate its activities from its Utah headquarters. *Id.* Plaintiff does not allege any involvement of a Church temple in the complaint.

**D.    The Fresno East Stake is a division of the incorporated Church.**

In the Church, the congregations where members worship weekly are called "wards." *Id.* ¶ 6. A "ward" is a congregation of 200 to 500 Church members. *Id.* "Branches" are smaller congregations of Church members, similar to wards. *Id.* There are about 14,593 wards and branches in the United States, including about 1,112 in California. *Id.* In the Church's hierarchical structure, a "stake" is a group of wards—usually 5 to 10 wards. *Id.* ¶ 7. There are about 1,693 stakes in the United States, including about 147 in California. *Id.*

Wards and stakes are ecclesiastical divisions of the Church. *Id.* ¶ 8. The Church organizes, administers, and controls wards and stakes through a hierarchical leadership structure. *Id.* ¶¶ 16–19. Individual Church members have no authority to establish their own wards and stakes. *Id.* ¶ 25. Local volunteers serve in ward and stake positions, such as teachers, librarians, and executive secretaries. *Id.* ¶ 9. Donations received by local clergy are transferred to the Church, which allocates funding to local wards and stakes. *Id.* ¶ 21.

The Fresno East Stake (Doe 3) is not separately incorporated; it is part of the incorporated Church. *Id.* ¶ 15. It is not registered with the California Secretary of State. *Id.*; Request for Judicial Notice ("RJN") ¶ 1, Exh. 1. It has no registered agent. Wilson Decl. ¶ 15, ECF 1-14. It has no mission or purpose distinct from the Church at large. *Id.* ¶ 16. And it is one of thousands of stakes organized and administered by the Church. *Id.* ¶ 7.

The Church funds the Fresno East Stake. *Id.* ¶ 21. All funds, records, and real estate used by the Stake are property of the Church. *Id.* ¶¶ 19-20. The Stake owns no real estate. *Id.* ¶ 20. Church officials appoint the president of the Stake and approve the appointment of any bishops of wards within the stake. *Id.* ¶¶ 9, 25. The Stake is subordinate to the Church in all aspects as an internal ecclesiastical division. *Id.*

¶¶ 8, 16, 18. In sum, the Stake has no legal existence separate from the Church; it is a division of the incorporated Church without a separate legal existence.

### III.    LEGAL STANDARD

"A defendant may remove any civil action brought in a State court of which the district courts have [diversity] jurisdiction." *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (quotation simplified). Diversity jurisdiction exists when a plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *see Lopez v. Kia Am., Inc.*, 693 F. Supp. 3d 1063, 1067 (C.D. Cal. 2023). A notice of removal must contain "a short and plain statement of the grounds of removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). A defendant need only demonstrate "by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).

### IV.    ARGUMENT

Plaintiff's remand motion must be denied. This controversy is between a California citizen and Utah citizens. The Fresno East Stake is part of the Church and cannot be sued separately from the Church. It must be disregarded for purposes of diversity. All other requirements for diversity jurisdiction are uncontested: Plaintiff is domiciled in California, Doe 1 and Doe 2 are Utah citizens, and the amount in controversy exceeds $75,000. Additional discovery on these uncontested points is unnecessary. Removal was proper.

**A.    Doe 3 must be disregarded for jurisdictional purposes.**

**1.    Doe 3 is a part of the incorporated Church and not an "unincorporated association."**

Doe 3 is a division of the Church, which *is* incorporated at its highest level, meaning its constituent parts—local wards and stakes—are part of the incorporation and not separate legal entities. The Fresno East Stake is one of thousands of similar ecclesiastical divisions within the hierarchical structure of the Church that are organized and governed by the Church to advance the common interests and mission of the Church.

Contrary to what Plaintiff argues, the Stake is not a so-called "unincorporated association" with its own separate legal existence. Mot. at 9–12. "The mere fact that a corporate entity is subdivided into

1  unincorporated departments or divisions does not transform those departments or divisions into separate

2  legal entities." *B-K Lighting, Inc. v. Vision3 Lighting*, No. 2:06-cv-02825-MMM-PLA, 2006 WL

3  8421831, at *2 (C.D. Cal. Nov. 14, 2006) (citing *Touche Ross & Co. v. State Bd. of Equalization*, 203

4  Cal. App. 3d 1057, 1067 (1988)). "A division of a corporation does not possess [a] formal separateness"

5  from the corporation, "and thus is not an independent entity for jurisdictional purposes." *Breitman v. May*

6  *Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (quoting *Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d

7  279, 284 (6th Cir. 1990)).

8        Numerous cases have held that individual stakes of the Church are not separate from the Church

9  for diversity purposes. This case is indistinguishable from *Jane Roe JW 142*, 2024 WL 5182415, which is

10  one of dozens of other cases recently filed by Plaintiff's lawyers on behalf of other clients. There, the

11  court rejected the argument that an unincorporated stake of the Church was an independent legal entity.

12  *Id.* at *2. Plaintiff advances the same argument here about the Fresno East Stake that the court in *Jane*

13  *Roe JW 142* rejected regarding the Menifee Stake. *Id.* at *1–2; *see also* Mot. at 3–5, 9–12. Although

14  "[e]ach stake is headed by a Stake President and comprised of Stake clerks, secretaries, councils, and

15  committees," this ecclesiastical structure does not create separate corporate entities. *Roe JW 142*, at *2.

16  "[T]his hierarchy is part of defendant LDS' formation for local churches, and local church leaders are

17  subject to such organization as outlined by [the Church's own] General Handbook." *Id.* at *3.

18        Here, as in *Roe JW 142*, Plaintiff relies entirely on Church sources that merely confirm the

19  hierarchical structure of the Church and its control over its stakes. *Id.* Every source Plaintiff relies on to

20  provide evidence about the stake is a Church source that reflects the Church's control over its stakes and

21  wards. *See* ECF 6-4 (the *Church's* General Handbook); ECF 6-5 (*Church*-owned BYU article); Mot. at 3

22  n.1, ECF 6-1 (*Church* website defining stakes); *Id*. at 4 n.5 (*Church* website meetinghouse locator

23  showing the Fresno East Stake as one of its subunits). As recently found in *Jane Roe LM 89*, 2025 WL

24  212143, at *3, the "hierarchical structure and these responsibilities … outlined in the Church's General

25  Handbook, and the exhibits relied on by Plaintiff confirms the Church's control over its Stakes." Thus,

26  far from establishing that stakes are separate legal entities from the Church, Plaintiff's evidence supports

27  the Church's argument. *See also John Roe AJ 1,* 2025 WL 85759, at *3 ("[T]he court is not persuaded

28  that Defendant Napa Stake is an independent entity for jurisdictional purposes. Rather, Defendants have

1    shown that defendant Napa Stake is controlled by [the Church] as one of its many places of

2    worship…."); *Jane Roe LM 89*, 2025 WL 212143, at *3 (concluding that the "Arcadia Stake … is not an

3    independent entity for jurisdictional purposes"). Just today, in *Jane Roe SR 3,* 2025 WL 339162, slip op.

4    at 3, the court addressed the same situation and denied Plaintiff's motion to remand, finding that the

5    Morgan Hill Stake is not an independent entity for jurisdictional purposes.

6         Plaintiff does not even allege in the complaint that the Fresno East Stake is an unincorporated

7    association and not just part of the incorporated Church. He alleges it is "a religious entity and subsidiary

8    of DOE 1" and is a "corporation sole duly organized, and operating pursuant to the laws of, the State of

9    California." Compl. ¶ 7, ECF 6-3. He also alleges that it is "registered to do business in California," *id*.,

10   which is disproved by the judicially noticeable absence of any registration with the California Secretary

11   of State and the Church's uncontroverted evidence. RJN ¶ 1, Exh. 1 at 3; Wilson Decl. ¶ 15, ECF 1-14.

12        Plaintiff's remaining allegations further undermine his claim that Doe 3 is an unincorporated

13   association by showing that the Fresno East Stake is simply part of the incorporated Church. For

14   example, Plaintiff alleges that the Stake operates "at the direction of and under the control of" the

15   Church. Compl. ¶ 7, ECF 6-3. He alleges the Church's "First Presidency and the Quorum of the Twelve

16   Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in

17   California" (*id*. ¶ 23); that stakes are part of the Church's hierarchical structure organized by "Areas" that

18   are overseen by an assigned member of the Quorum of the Seventy who reports to the Quorum of the

19   Twelve Apostles (*id*. ¶¶ 24–25); that stake presidents "act[] under the direction for [sic] the Quorum of

20   the Seventy in his Area" (*id*. ¶ 25); that Church membership records are transmitted to and controlled by

21   the Church (*id*. ¶ 34); and that local ward and stake leaders follow the President of the Church's guidance

22   on responding to abuse (*id*. ¶¶ 36–41).

23        Plaintiff argues that the Stake President "oversee[]s records, finances, and property in the stake."

24   Mot. at 4, ECF 6-1 (citing the Church's handbook). Like any corporation, the Church can authorize

25   leaders within its hierarchical organization to "oversee" records, finances, and property. But Plaintiff

26   proffers no evidence to contradict the Church's evidence that the Stake owns no assets or property, remits

27   all donations to the Church, is completely funded by the Church, does not own the property in Fresno,

28   and maintains no independent records. Wilson Decl. ¶¶ 19-22, ECF 1-14.

Other than these allegations, the complaint contains virtually no allegations specific to the Fresno East Stake. Instead, Plaintiff engages in artful pleading by using the non-specific term "Defendants" throughout without any allegations specific to the Fresno East Stake. And when the Complaint *does* focus on a specific Defendant, it focuses entirely on DOE 1's (the Church's) activities. *See, e.g.*, Compl. ¶ 8, ECF 6-3 ("The *Defendants each* assumed responsibility for the wellbeing of their members, whether as clergy or volunteers *appointed by DOE 1*."), ¶ 9 ("Defendants' income comes from member tithes *which are turned over to DOE 1 for investment and other uses* ….") (emphases added). Plaintiff points to eight bullet-point allegations that purportedly relate to the Fresno East Stake, *see* Mot. at 11-12, ECF 6-1, but apart from a single allegation about the Fresno East Stake's purported principal place of business, none of these allegations relates specifically to the Fresno East Stake and none has any bearing on whether it has a separate legal existence. Further, he alleges that the Stake's "principal place of business" is 1880 Gettysburg Avenue in Clovis, California, but that address is not the principal place of business of any legal entity. Compl. ¶ 7, ECF 6-3; Notice of Removal ¶ 12, ECF 1; Wilson Decl. ¶ 23, ECF 1-14. Plaintiff points to the allegation that "[e]ach Stake creates and maintains meticulous sets of membership records" but uses an ellipsis to deliberately refrain from quoting the rest of the allegation: "Each Stake creates and maintains meticulous sets of membership records *which are reviewed and controlled by DOE 1*." Compl. ¶ 34, ECF 6-3 (emphasis added).

Thus, Plaintiff's own allegations prove the Fresno East Stake is not an "organic entity" but is, instead, "wholly subsumed" by the Church. Mot. at 4. Plaintiff carefully alleged that the Fresno East Stake is organized, managed, and controlled by the Church. He cannot undo that accurate description of the relationship between the Church and the Fresno East Stake. And in any event, the Church has established the Fresno East Stake is part of the incorporated Church. *See generally* Wilson Dec., ECF 1-14.

Plaintiff's reliance on *Barr v. United Methodist Church*, 90 Cal. App. 3d 259 (1979) is misplaced.[6] Mot. at 10, ECF 6-1. In *Barr*, the California Court of Appeal analyzed the organizational structure of the United Methodist Church ("UMC") and determined that it could be sued as an

---

[6]     The reasoning in *Barr* has been criticized. *See Chestnut v. United Methodist Church*, 215 N.Y.S.3d 376, 391 (App. Div. 2024) (recognizing *Barr* is "based upon questionable reasoning").

"unincorporated association." *Barr,* at 267–270. That conclusion has no application here.

At the outset, "[a]n internal division of a company or corporation is dissimilar to the types of unincorporated associations discussed in *Barr*." *Intellisoft, Ltd v. Wistron Corp.*, No. H044281, 2019 WL 5204293, at *12 (Cal. Ct. App. Oct. 16, 2019). The court's decision in *Barr* was based largely on the concept of "fairness." And "fairness does not require that an internal division of a company or corporation be recognized as a legal entity." *Id*. After all, "[t]hose whose rights have been violated by the internal division may file a lawsuit against the … corporation itself." *Id*. Here, the Church is already a defendant.

Yet to the extent *Barr* is helpful here, it describes the UMC as a global hierarchical church where "the local church is a part of the whole body of the general church and is subject to the higher authority of the organization and its laws and regulations." *Id*. at 268–69 (quoting *Carnes v. Smith*, 236 Ga. 30, 33 (1976)). Plaintiff acknowledges those hierarchical similarities between the UMC and the Church at their highest levels, with the UMC recognized as a separate legal entity subject to suit as an "unincorporated association" and the Church subject to suit as an incorporated non-profit corporation. There are also obvious similarities at the lower level between a UMC "district" and a Church stake, both as constituent parts of their respective hierarchies. Mot. at 10-12.[7] The similarities end there.

- The highest-level UMC is not like a local stake, any more than the Church is like a local Methodist "district." That is amply demonstrated by considering the factors that persuaded the court in *Barr* to find the UMC was an "unincorporated association" subject to suit.

- Unlike the UMC, the Stake does not have the "highest judicatory body" for members within its organization, *Barr,* at 268; rather, the President of the Church is the highest authority. Wilson Decl. ¶¶ 4–5, ECF 1-14.

- Unlike the UMC, the Stake does not have its own "book of law," *Barr*, at 268, but is subject

---

[7]     *Glossary: District*, THE PEOPLE OF THE UNITED METHODIST CHURCH, https://www.umc.org/en/content/glossary-district#:~:text=Groups%20of%20churches%20in%20a,provide%20training%20and%20mission%20opportunities.&text=Each%20district%20is%20led%20by,oversees%20programs%20within%20the%20district.&text=In%20the%20US?,Find%20your%20district%20here.&text=From%20United%20Methodist%20Member%27s%20Handbook,24.&text=From%20What%20Every%20Teacher%20Needs,30 (last visited January 20, 2025).

TRÉPANIER
TAJIMA LLP
Los Angeles

to the Church's General Handbook. Wilson Decl. ¶ 18, ECF 1-14.

- Unlike the UMC, the Stake has no "central treasury," *Barr*, at 269, because donations received by ecclesiastical leaders within the Stake are remitted to the Church and the Church in turn allocates funds back to the congregations within the Stake. Wilson Decl. ¶ 21, ECF 1-14.

- Unlike the UMC, the Stake has no appointed agent "to take all necessary legal steps" to protect its interests, *Barr*, at 269; rather, it is the Church that retains counsel and protects the interests of the Church as a whole, including its internal divisions. Wilson Decl. ¶ 27, ECF 1-14.

- Unlike the UMC, the Stake is not "a named insured on a high limit contract of insurance," *Barr*, at 269, as it has no assets, and any judgment would be paid by the Church. Wilson Decl. ¶¶ 20, 26, ECF 1-14; *see also Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*, 72 Cal. App. 5th 1042, 1059 (2021) (considering that the congregation purchased and insured the church property and made premium payments for 18 years when finding that it was an unincorporated association).

The UMC in *Barr* and Doe 3 here are not alike. Doe 3 is not an "unincorporated association" but simply a part of the incorporated Church.

### 2.    As an unincorporated division of the Church, the Fresno East Stake cannot sue or be sued.

In any lawsuit, the only proper parties are "persons or other legal entities of which the law [will] take cognizance." *Miller v. Superior Court*, 26 Cal. App. 41, 44 (1915); *accord Gee v. Greyhound Lines, Inc.*, 6 Cal. App. 5th 477, 481 n.2 (2016) (something that is not a legal entity "can neither sue nor be sued") (citation omitted); *Siegal v. Superior Court*, 203 Cal. App. 2d 22, 24 (1962) (similar). "Ninth Circuit precedent holds that, unlike a legally incorporated subsidiary, an unincorporated division of a corporation does not possess the formal separateness required and is therefore not an independent entity for jurisdictional purposes." *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 939 (C.D. Cal. 2011) citing *Breitman*, 37 F.3d at 564 (affirming diversity jurisdiction existed because an unincorporated division did not possess independent citizenship).

TRÉPANIER TAJIMA LLP Los Angeles

"Corporations are proper defendants; unincorporated divisions of them are simply that—parts of them." *Rockymore,* 2022 WL 2704122, at *3. "[B]y definition a corporate division is not a separate legal entity and hence is not suable." *Salzstein v. Bekins Van Lines, Inc.*, 747 F. Supp. 1281, 1282 n.1 (N.D. Ill. 1990).

Consider *John DZ 20, et al. v. Doe 1*, No. 22CV408645 (Santa Clara Sup. Ct., Jan. 2, 2024). *See* Declaration of Lisa Dearden Trépanier ¶ 6, Exh. A. In that case, plaintiffs sued a ward and a local stake of the Church. The Church made a special appearance to move to quash the purported service of the summons on the ward and stake. The court granted the motion:

> Defendant Ward and Defendant Stake are sued in this case as unincorporated associations, but [they] are not unincorporated associations. Defendant Ward and Defendant Stake are parts of the Church which exists in the secular world as Church Corporation. Church members are part of the Church, not their local ward or stake. When Church members move, they attend different wards, but their membership does not change. Church members attend services in any ward they choose, often doing so when traveling. Ward and stake boundaries change as Church membership grows or shrinks.

*Id*. at 13. Similarly, in a case involving the Catholic Church, the plaintiffs sued a Catholic school and a parish, neither of which was incorporated, along with the Catholic Diocese of Wichita, which was incorporated in the higher Catholic hierarchy. *See Silva v. St. Anne Catholic Sch.*, 595 F. Supp. 2d 1171 (D. Kan. 2009). The court dismissed the unincorporated school and parish, refusing to consider them for jurisdictional purposes because they are not "separate legal entities from the Catholic Diocese of Wichita, a Kansas Corporation." *Id*. at 1179 (citing *Fuller v. Woodland Racing*, No. 92–2317–GTV, 1994 WL 171408, at *2–3 (D. Kan. Apr. 7, 1994) (dismissing improperly named defendants as non-entities without capacity to be sued); *see also Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1033 (N.D. Cal. 2004) (dismissing a defendant that was not "legally separate from its owner").

Plaintiff cites *Geppert v. Church of Jesus Christ of Latter-Day Saints, Inc.*, No. 23-cv-05763-JSW, 2024 WL 495255 (N.D. Cal. Nov. 16, 2023). Mot. at 8. But *Geppert* proves the Church's point. Plaintiff acknowledges that "[a] majority of the Stakes in California are unincorporated …." Mot. at 4. For unique reasons, the stake at issue in *Geppert* was one of a handful of stakes in California for which the Church (years ago) incorporated an affiliated legal entity. The issue in *Geppert* was not whether the Corporation of the President of the San Jose Stake of the Church was a legal entity. It plainly was. The

1    issue was whether that legal entity could be held liable for the alleged actions at issue. *See Geppert,* at

2    *4.

3        Plaintiff's reliance on three out-of-state court cases, *Smith v. Church of Jesus Christ of Latter-day*

4    *Saints*, 431 F. Supp. 3d 733 (E.D. Va. 2020), *Turner v. Church of Jesus Christ of Latter-day Saints*, 1996

5    WL 34447787 (N.D. Tex. Feb. 22, 1996), and *Committee of Tort Litigants v. Catholic Diocese of*

6    *Spokane*, 364 B.R. 81 (E.D. Wash. 2006), is also misplaced. In *Smith*, the "corporate status" of the local

7    stake was ambiguous only because the Church Corporation had acknowledged that a relevant individual

8    was an employee of the local stake, which lent evidence to a finding under Virginia law that the local

9    stake was an unincorporated association. *Smith*, 431 F. Supp. 3d at 739. Here, in contrast, the Church

10   Corporation is the entity that hires and pays Church employees; stake presidents and bishops are unpaid

11   local Church clergy who are part-time volunteers and are <u>not</u> employed by the local Stake. *See* Wilson

12   Decl. ¶¶ 9, 12, ECF 1-14. *Turner* is irrelevant because the plaintiff in that case sued the Church, not a

13   subunit of the Church, and as a result, has no bearing on whether a subunit of the Church can be sued or

14   not. *Turner*, 1996 WL 34447787, at *1. Finally, *Committee of Tort Litigants* is distinguishable because

15   that case involved the Catholic Church, an organization that is structured differently from the Church,

16   including because the Catholic Church relies on full-time, paid, employed priests and deacons as opposed

17   to the part-time volunteer missionaries that make up the Church's clergy. *See* Wilson Decl. ¶¶ 3-26, ECF

18   1-14.

19       At bottom, Plaintiff advocates for a radical expansion of the law of unincorporated associations.

20   According to Plaintiff's theory, the corporate form of an entity can be disregarded, and a corporate

21   division becomes a separate legal entity merely because a division shares a common purpose and

22   common name with the corporation as a whole. Such an untenable change in the law would have far-

23   reaching consequences. Virtually all divisions of any corporation share a common purpose and name

24   with the corporation as a whole. Under Plaintiff's analysis, all corporate divisions would routinely be

25   severed from the corporate umbrella and would be transformed into separate legal entities as

26   "unincorporated associations," merely because they shared a common purpose and name. If a plaintiff

27   wants to sue Walmart, he cannot also sue the HR division of Walmart to defeat diversity.

28       For these reasons, Doe 3 has no capacity to be sued and is thus entitled to dismissal. *See Miller*,

26 Cal. App. at 44 (noting in any lawsuit, the only proper parties are "persons or other legal entities of which the law [will] take cognizance."); *Gee*, 6 Cal. App. 5th at 481 (something that is not a legal entity "can neither sue nor be sued"); *Burger*, 325 F. Supp. 2d at 1033 (dismissing a defendant that was not "legally separate from its owner"). There is no possibility of recovery against a non-existent entity.

### 3. Even if it could be sued, the Stake would possess the Church's citizenship.

Alternatively, "[u]nincorporated divisions of a company take on the corporate parent's principal place of business …." *Peich v. Flatiron W., Inc.*, No. 5:16-cv-00540-ODW-DTB, 2016 WL 6634851, at *2 (C.D. Cal. Nov. 9, 2016). "The Court must focus on the corporation as a whole, not upon an unincorporated division of a corporation, when determining the citizenship of the corporation for diversity purposes." *Lee v. TRW, Inc.*, No. 2:02-cv-05172-FMC-RZx, 2003 WL 27382060, at *2 (C.D. Cal. May 15, 2003).

In *Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337 (9th Cir. Sep. 28, 2021), the plaintiff sued both Tinder and Match Group, Inc., contending that Tinder was a forum defendant. But Tinder had merged with Match Group before the lawsuit was filed, becoming a division of Match Group and not a separate legal entity. As the Ninth Circuit explained, "following Tinder's merger with Match Group, Inc., Tinder ceased to exist as a separate entity" and "continues to exist solely as an unincorporated division of Match Group." *Id*. at *1. Thus, the court refused to consider Tinder for assessing diversity. "Because '[a] division of a corporation … is not an independent entity for jurisdictional purposes,' the district court did not err by considering only Match Group, LLC's citizenship for purposes of assessing its jurisdiction." *Id*. (citing *Breitman*, 37 F.3d at 564); *see also Jane Roe LM 89*, 2025 WL 212143, at *3 ("The Arcadia Stake (Doe 3) thus possesses the citizenship of the Church and is a citizen of Utah.").

Here, the Stake is an unincorporated division of the Church, which is a Utah citizen. *See* Compl. ¶ 5, ECF 6-3. Thus, even if the Stake's citizenship were considered, the Stake is a Utah citizen for diversity jurisdiction purposes.

### 4. Plaintiff is forum shopping by fraudulently joining the Stake.

Church counsel has asked Plaintiff's counsel repeatedly why they named the Stake as a party when it is not a separate entity, and the Church pays all settlements or judgments and holds all the assets.

Wilson Decl. ¶¶ 14-16, 20-21, 27, ECF 1-14; Trépanier Decl. ¶¶ 2-5. Plaintiff's counsel's explanation: "Because we believe these cases should stay in state court." Trépanier Decl. ¶ 3. That is the definition of fraudulent joinder, gamesmanship, and forum shopping. Plaintiff's counsel's other explanation is that they believe the Stakes have records. *Id.* ¶¶ 3, 5. Church counsel explained that the Stakes are unlikely to have any records, but if they do, those records belong to the Church and would be produced in response to discovery served on the Church—just as Walmart would be required to produce any documents held by its HR department—subject, of course, to any applicable objections or privileges. *Id.* ¶ 5. Plaintiff's counsel has articulated no legitimate reason for keeping the Stake as a party – they just want to be in state court.

> **5.     Because the Stake is not a proper entity, there is no "forum defendant" so "snap removal" does not apply**

Plaintiff argues that the Church has employed "gamesmanship" through "snap removal." Mot. at 14, ECF 6-1. The "snap removal" rule applies only if there is a forum defendant, but the parties are otherwise diverse. There is no forum defendant in this case. Doe 1 and Doe 2 are the only proper defendants, and they are Utah corporations; Plaintiff is a California citizen. *Edwards v. UPS*, No. 2:24-CV-01283-KJM-DMC, 2024 WL 4132664 (E.D. Cal. Sept. 10, 2024), cited by Plaintiff, is not to the contrary. The *Edwards* court held that "[w]hen evaluating whether diversity exists, a court cannot ignore a defendant's citizenship simply because the defendant has not yet been served." *Id.* at *3 (citations omitted). The Church is *not* asking the Court to ignore Doe 1 or Doe 2's citizenship – they are Utah corporations. And the Church is *not* asking the Court to ignore Doe 3's citizenship because it has not been served, but because it does not exist as a separate entity. Plaintiff's "snap removal" argument is a red herring. The Church's removal before service does not change the fact that Doe 3 is not a suable entity. Without Doe 3, there is complete diversity.

Plaintiff's entire discussion of "absurd results" makes no sense and is procedurally inaccurate. Plaintiff argues that the Church's "snap removal" interfered with his ability to comply with California Code of Civil Procedure § 340.1 and interfered with his ability to serve the Complaint on the defendants. Mot. at 12-16. Both are wrong. First, snap removal does not apply as there is no forum defendant. Second, the Ninth Circuit is clear that a defendant may remove before being served. *Mayes v. Am.*

TRÉPANIER
TAJIMA LLP
Los Angeles

*Hallmark Ins. Co. of Texas*, 114 F.4th 1077, 1079 (9th Cir. 2024). A defendant may also waive service, and such waiver does not make removal improper. *Id.* The Church Defendants filed an answer in state court on November 19, 2024, thus waiving service. ECF 1-11. Any further service is unnecessary. The Church Defendants engaged in no gamesmanship. Third, Plaintiff cites no reason why he cannot lodge the certificates of merit he lodged in the state court action in this Court. *See, e.g., Von Bradley v. Dep't of Children & Family Servs.*, No. CV 17-6556-JFW (AGR), 2018 WL 7291450, at *4 (C.D. Cal. Dec. 12, 2018) (court held a certificate of merit should be filed in federal court under Section 340.1); *B&G Foods N. Am., Inc. v. Embry*, 638 F. Supp. 3d 1122, 1134 (E.D. Cal. Nov. 3, 2022) (inviting B&G to challenge truthfulness of certificate of merit in federal court in a Proposition 65 case). The removal did not interfere with Plaintiff's ability to comply with Section 340.1 in any way.

**B.     The other prerequisites for diversity have been met.**

   **1.     Plaintiff is domiciled in California: He is under court order to remain in California until at least 2027**

Plaintiff makes much ado about his "citizenship," contending that Defendant failed to submit sufficient evidence that Plaintiff intends to remain in California to establish his domicile. Mot. at 16:25-26. First, the Church need only raise the presumption that he is domiciled in California to support removal. The Church satisfied this low burden to allege Plaintiff's domicile by alleging "that Plaintiff is a citizen of California" based on Plaintiff's own allegation that he was a California resident at the time he filed the complaint. Notice of Removal ¶ 7, ECF 1. While residency is not equivalent to domicile, "[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary." *Anderson v. Watts*, 138 U.S. 694, 706 (1891); *Lew v. Moss*, 797 F.2d at 750 (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020) ("[A] person's residence constitutes *some* evidence of domicile.") (emphasis in the original); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("[T]he place of residence is *prima facie* the domicile."); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("[T]he place of residence is prima facie the domicile."); *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (person is presumptively domiciled at place of residence).

The Ninth Circuit has ruled that identical allegations were sufficient to establish domicile. *See Ehrman v. Cox Comm'ns, Inc.,* 932 F.3d 1223, 1227–28 (9th Cir. 2019) (concluding that defendant's jurisdictional allegations were sufficient by providing a short and plain statement, based on information and belief, that plaintiffs "were citizens of California" and "need not contain evidentiary submissions"); *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086–88 (9th Cir. 2014) (acknowledging that a defendant's removal petition may include allegations based on information and belief when the information necessary to establish diversity jurisdiction was not reasonably available).

In any event, the Church submitted ample additional evidence to establish Plaintiff's California domicile. Public records show Plaintiff owns a home in Fresno County, California. Notice of Removal ¶ 7, ECF 1; Declaration of Adam Dawson, Exh. A, ECF 1-21. Plaintiff's wife listed that address as her home address and obtained a move-out order against Plaintiff from the Fresno County Superior Court when she filed a domestic violence restraining order against Plaintiff. Notice of Removal ¶ 7, ECF 1; Dawson Decl., Exh. B, ECF 1-22. Clearly, Plaintiff was living in the home before such order was issued. In subsequent court records, Plaintiff identified his residence address as two different addresses – both in Fresno County. Notice of Removal ¶ 7, ECF 1; Dawson Decl., Exh. E, ECF 1-25. Most importantly, **Plaintiff's criminal records show he is currently on probation and under court order *not* to leave California until at least 2027 without permission.** Notice of Removal ¶ 8, ECF 1; Dawson Decl., Exh. F, ECF 1-26 [April 25, 2024 Fresno County Superior Court Minute Order] ("Imposition of judgment and sentence is suspended for a period of 3 years and Defendant is placed on Formal Probation on the following terms and conditions: … Do not leave California…"). He was required to get permission from the Fresno County Superior Court to attend a wedding out-of-state in December 2024 and was required to report to his probation officer immediately upon his return. Notice of Removal ¶ 8, ECF 1; Dawson Decl., Exh. G, ECF 1-27. Plaintiff argues the Notice of Removal was defective because it equates residence with domicile. But given that it would be a crime for Plaintiff to leave California, it is especially reasonable to presume his domicile is in California.

The Church's evidence, especially in the absence of contrary evidence, is sufficient to establish by a preponderance of the evidence that Plaintiff is domiciled in California. Once the Church presented this evidence, the burden shifted to Plaintiff to demonstrate otherwise, or he could elect to rest on the

1  facial or factual arguments at his own risk. *See Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 885

2  (S.D. Cal. 2021) ("If a defendant carries its burden of presenting evidence that diversity of citizenship

3  exists, the burden of production shifts to the plaintiff to rebut the evidence of diversity of citizenship.");

4  *see also Lew v. Moss* at 751.

5      Tellingly, nothing in Plaintiff's remand motion challenges his California citizenship. Indeed, he

6  appears to concede the fact by referring to himself as a "California plaintiff" and asserting that there are

7  "California residents on both sides of the 'v.'". *See* Mot. at 1:11, 9:3. Plaintiff has produced no evidence

8  to refute that he intends to remain in and is domiciled in California; he cannot do so without implicating

9  himself in a crime. The court in *JW 142* rejected Plaintiff counsel's "apparent gamesmanship regarding

10 Plaintiff's citizenship" and threatened future sanctions in precisely the same situation as here: the Church

11 "adequately pled Plaintiff's citizenship" in California, Plaintiff submitted no contrary evidence of

12 citizenship in another state, and the Church had "more than sufficient evidence to satisfy a factual attack"

13 on citizenship allegations. *JW 142,* 2024 WL 5182415, at * 3, n.3.

14      **2.      The $75,000 amount in controversy is satisfied.**

15      Plaintiff does not dispute that the amount in controversy exceeds $75,000. "[T]he defendant's

16 amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by

17 the court." *Dart Cherokee Basin*, 574 U.S. at 87.

18      In any event, the Church demonstrated based on the "facially apparent" allegations in the

19 complaint that the amount in controversy exceeds $75,000. *See* Notice of Removal ¶¶ 19–23, ECF-1; *see*

20 *also Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)

21 ("This [preponderance] burden can easily be met if it is facially apparent from the allegations in the

22 complaint that plaintiff's claims exceed $75,000."). Plaintiff alleges he was repeatedly sexually abused as

23 a child from 1990 to 1997, and that the Church is liable to him for the abuse. Compl. ¶¶ 2, 51–52, ECF 6-

24 3. Plaintiff further alleges that as a result of the abuse, he "suffered severe and permanent injuries

25 including, but not limited to, physical and mental pain and suffering, severe emotional distress,

26 psychological harm, physical injuries, past and future costs of medical care and treatment, and past and

27 future loss of earning capacity, and other damages …." *Id.* ¶ 63. The Court can consider "the reality of

28 what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of

1   damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Given that

2   Plaintiff has not contested the amount in controversy and the Court can use reasonable assumptions to

3   determine that a sex abuse case would, if proven, involve potential damages in excess of $75,000, the

4   amount in controversy requirement is easily satisfied.

5   **C.    Plaintiff's request for discovery should be denied.**

6          As a last-ditch alternative to remand, Plaintiff asks this Court to allow additional time to conduct

7   discovery relevant to the Stake. Mot. at 17-18. The Court should deny this request because it has

8   sufficient and uncontroverted information to decide Plaintiff's motion. Discovery may be granted where

9   "pertinent facts bearing on the question of jurisdiction are controverted," but not where "it is clear that

10  further discovery would not demonstrate" additional relevant facts. *Hicks v. Grimway Enters., Inc.*, No.

11  22-CV-2038 JLS (DDL), 2023 WL 3319362, at *12 (S.D. Cal. May 9, 2023) (quotation marks omitted).

12  Moreover, a party's request for jurisdictional discovery must identify what information discovery is

13  expected to reveal; a "mere hunch that discovery might yield jurisdictionally relevant facts, or bare

14  allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional

15  discovery." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864-65 (9th Cir. 2022); *see also*

16  *Boschetto v. Hansing*, 539 F.3d 1011, 1020, 1023 (9th Cir. 2008) (Rymer, J., concurring) ("Where, as

17  here, a plaintiff's claim of personal jurisdiction is both attenuated and based on bare allegations rebutted

18  by specific denials made by the defendants, the district court need not permit even limited discovery.").

19         Here, it is clear that discovery would not uncover facts that could defeat diversity. Plaintiff's own

20  evidence is exclusively derived from Church sources. The Church is an incorporated entity whose

21  ecclesiastical subdivisions cannot have a separate legal existence as unincorporated associations as a

22  matter of law. Because the Stake has no separate legal existence, its alleged citizenship must be

23  disregarded for purposes of determining diversity. No possible discovery could change this. And Plaintiff

24  concedes as much by failing to identify a single jurisdictionally relevant fact he hopes to uncover by

25  conducting discovery. Instead, Plaintiff hopes to subject the Church to a fishing expedition based on his

26  bare allegations as to the Stake's legal status. This can only result in undue expense and delay. The Court

27  should deny Plaintiff's alternative request to conduct jurisdictional discovery.

28

## V.    CONCLUSION

The Church respectfully asks the Court to deny Plaintiff's Motion to Remand.


Dated: January 30, 2025                        TRÉPANIER TAJIMA LLP


_/s/ Lisa Dearden Trépanier_
Lisa Dearden Trépanier
Attorneys for Defendants
Doe 1 and Doe 2
[Filed on behalf of Doe 1 only]